# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DUKE THOMAS NGUYEN,<br>Plaintiff,<br>v.<br>LVMPD/CCDC, *et al.*,<br>Defendants. | Case No. 2:18-cv-01717-RFB-PAL<br>ORDER |

## I. INTRODUCTION

Plaintiff Duke Thomas Nguyen moves for a temporary restraining order or preliminary injunction, seeking an order that enjoins Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Clark County Detention Center ("CCDC"), Office of the Clark County District Attorney ("CCDA"), and Prisoners Transportation Services ("PTS") from returning Plaintiff to Texas with PTS's services.

## II. PROCEDURAL HISTORY

Plaintiff sued Defendants on September 6, 2018, alleging violations of his Eighth, Fourteenth, and First Amendment rights. ECF No. 1-1. He filed an application for leave to proceed *in forma pauperis* simultaneously. ECF No. 1. On January 2, 2019, Plaintiff filed the instant motion for temporary restraining order based on the travel conditions occurring between August 2, 2018 and August 11, 2018. ECF No. 6. His complaint has not yet been screened in accordance with 28 U.S.C. § 1915A(a). See docket.

## III. FACTUAL ALLEGATIONS

In relation to his first claim for relief, Plaintiff alleges the following in his Complaint:

LVMPD, CCDC, and CCDA contracts with PTS for inmate transportation services. ECF

No. 1-1 at 4. PTS is a private, for-profit entity. Id. In accordance with the contractual relationship and after Plaintiff had been released from a Texas prison, PTS took custody of Plaintiff on August 2, 2018 to transfer him to the State of Nevada to answer an outstanding warrant. ECF No. 1-1 at 3. The transportation process lasted nine days; Plaintiff arrived at Las Vegas, Nevada on August 11, 2018. Id.

During the transportation process, PTS subjected Plaintiff to harsh conditions of confinement. Id. at 4. PTS initially placed Plaintiff in a dorm at PTS's Missouri hub. Id. The dorm lacked working showers, drinking water, and working faucets. Id. The dorm had one working toilet, which was sandwiched between two other toilets filled with feces and urine. Id. The single toilet was shared by twenty-four men, including Plaintiff. Id. PTS provided only three rolls of toilet paper every forty-eight hours, which was also shared by the twenty-four men. Id. Plaintiff remained in the dorm for the seventy-two hours of the transportation process. Id.

After the seventy-two hours, PTS then began to transport Plaintiff from Missouri to Nevada via a small van. Id. PTS shackled Plaintiff for the duration of the cross-country trip in the 3 x 9 x 5.6 foot kennel of a small van. Id. He remained in the "very claustrophobic" kennel of the van for the next six days alongside eight other men and three females. Id. The kennel was small and had little airflow. Id. The kennel also had no windows, meaning there was "very little light during the day and total darkness at night." Id. Despite the dark conditions, PTS required Plaintiff to urinate in empty bottles during the six-day trip and eat dinner without utensils. Id. PTS did not allow Plaintiff to defecate during the trip. Id.

At some point during the trip, the van ran out of gas in an area with temperatures exceeding one hundred degrees. Id. Plaintiff and the other travelers were forced to remain in the van, smelling and breathing in the odors from each other's bodies and waste for hours. Id. Additionally, the van lacked any airflow once it ran out of gas. Id. at 5. It also had little ventilation. Id. The conditions caused one traveler to urinate on himself after becoming disoriented. Id. Plaintiff was subjected to the odor for the duration of the trip. Id.

///

///

Despite suffering from seizures and chronic obstructive pulmonary disease, PTS refused to provide Plaintiff with any medication during the transportation process.[1]  Id.  Plaintiff suffered a mild seizure as a result.  Id.  He also now suffers from nightmares and post-traumatic stress disorder as a result of suffering from the harsh conditions.  Id.  He also arrived in Las Vegas with a hurt shoulder and a bleeding head wound due to PTS's staff driving unsafely.  Id.  Even though Plaintiff began bleeding from his head during the trip, PTS continued driving.  Id.

## IV.    LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction.  Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction."  Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)).  A preliminary injunction may also issue under the "serious questions" test.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter).  According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements.  Id. at 1134-35 (citation omitted).

A temporary restraining order may be issued without notice to the adverse party only if the moving party: (1) provides a sworn statement clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) sets forth the efforts made to notify the opposing party and why notice

---

[1] Plaintiff also alleges that he suffers from an enlarged prostate in his Motion for Temporary Restraining Order.  ECF No. 6 at 2.

should not be required. Fed. R. Civ. P. 65(b)(1). Temporary restraining orders issued without notice "are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974) (citation omitted).

## V. DISCUSSION

The Court construes Plaintiff's Motion for a Temporary Restraining Order as being based on Plaintiff's claims for inadequate medical care and unconstitutional conditions of confinement.[2] The Court therefore considers the Winter elements as applied to the two claims.

### a. Likelihood of Success on the Merits

The Court finds that Plaintiff has raised, at minimum, a serious question as to the merits of Plaintiff's two claims with regard to the alleged conduct of Defendant PTS[3] (but not the other Defendants at this time). The Court addresses each claim in turn.

#### i. *Inadequate Medical Care*

The Court first considers Plaintiff's claim for inadequate medical care. A pretrial detainee's claims regarding inadequate medical care fall under the Fourteenth Amendment's Due Process Clause, which imposes an "objective deliberate indifference" standard. Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). A Plaintiff must prove four elements for a successful claim: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. The third element requires the

---

[2] While the Court addresses only two claims for the purpose of this Order, the Court notes that the forthcoming screening order may outline additional causes of action.

[3] Based upon the allegations the Court finds that PTS was acting pursuant to its contract under color of state law and thus may be liable for constitutional violations. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71 n.5 (2001) (explaining that state prisoners enjoy a right of action against private correctional providers under 42 U.S.C. § 1983).

court to consider if the defendant's conduct is "objectively unreasonable." Id. The inquiry is case specific, turning on the particularities of the facts and circumstances in a case. Id. A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id.

Plaintiff alleges PTS made multiple intentional decisions with respect to the conditions that Plaintiff endured during the transportation process, including: (1) limiting access to toilet paper, drinking water, and sanitary facilities; (2) refusing to provide Plaintiff medications during the six-day cross-country trip despite his medical conditions; and (3) unsafe driving leading to physical injury.

Plaintiff also alleges that the conditions caused a substantial risk of serious harm to him. Indeed, Plaintiff allegedly suffered from a mild seizure, an injured shoulder, and a head wound. He now allegedly suffers from nightmares and post-traumatic stress disorder.

As to the third element, Plaintiff alleges that PTS failed to take reasonable measures to abate the risk of serious harm. Objectively, refusing to provide medication or opportunities over a six-day period could likely result in traumatic consequences.

Finally, Plaintiff alleges he suffered harm as a result of the conditions imposed by PTS and continues to suffer additional harm. His allegations raise, at minimum, a serious question as to the merits of his claim against Defendant PTS for inadequate medical care.

    ii. *Unconstitutional Conditions of Confinement*

The Court now turns to Plaintiff's claim of unconstitutional conditions of confinement. A pretrial detainee's claims challenging conditions of confinement also fall under the Fourteenth Amendment's Due Process Clause. Shorter v. Baca, 895 F.3d 1176, 1183 (9th Cir. 2018). Based on the Court's reading of Castro v. County of Los Angeles, 833 F.3d 1060, 1068–71 (9th Cir. 2016) and Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018), the Court finds Plaintiff must show the following elements in a claim of unconstitutional conditions of confinement: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) the conditions were not necessary to serve the penological interest related to the confinement of the pretrial detainee or the conditions were excessive as to the particular

penological purpose; (3) the conditions were objectively dehumanizing, uncivil, or unsanitary; and (4) the defendant did not take reasonable steps to alleviate or remedy the conditions.

Plaintiff alleges that Defendant PTS deprived him of sanitary living/transportation conditions, adequate medical care, and the opportunity to defecate/urinate. While certain conditions may be imposed on pretrial detainees for penological interests, no apparent penological interest is linked to (i) PTS' alleged refusal to allow Plaintiff to appropriately urinate/defecate over the six-day cross-country trip, (ii) PTS' failure to provide his prescribed medications over the nine-day transfer process, (iii) PTS' failure to provide proper ventilation and movement within the van, or (iv) PTS subjecting Plaintiff to mentally tormenting conditions, *e.g.* near continuous darkness for six days. The Court finds that the alleged conditions are objectively dehumanizing and unsanitary. Defendant PTS also did not take reasonable steps to address or remedy these conditions. Plaintiff's allegations therefore raise, at minimum, a serious question as to whether Defendant PTS subjected Plaintiff to unconstitutional conditions of confinement.[4]

Accordingly, the Court finds that the first Winter element favors granting a temporary restraining order under both of Plaintiff's claims.

### b. Irreparable Harm

The Court now turns to the second Winter element: whether Plaintiff will likely suffer from irreparable harm. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. Because intangible injuries generally lack an adequate legal remedy, intangible injuries may qualify as irreparable harm." Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014) (internal quotations, citations, and punctuation omitted). The conditions imposed by PTS during the six-day trip allegedly caused Plaintiff to suffer physical injuries and be subject to dehumanizing and unsanitary confinement conditions. Plaintiff is allegedly scheduled for transport back to Texas by PTS on January 9, 2019. Because PTS will allegedly transport Plaintiff back to Texas, it is likely that similar conditions will be

---

[4] The Court notes that the alleged conditions would also support issuing a temporary restraining order to enjoin Plaintiff's transfer back to Texas under the more stringent, deliberate indifference standard employed by the Eighth Amendment. See Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

imposed, resulting in imminent and intangible harm. The second <u>Winter</u> element therefore favors granting the temporary restraining order.

### c. Balance of Equities

The Court finds that the balance of equities tips sharply in favor of the Plaintiff given that the Constitution and federal law provides explicit protections to pretrial detainees in relation to adequate medical care and conditions of confinement.

### d. Public Interest

The Court also finds that the public interest is in Plaintiff's favor; the public has a strong interest in maintaining the protections afforded to pretrial detainees by the Fourteenth Amendment.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (ECF No. 6) is GRANTED . **<u>The Court issues a temporary restraining order for the duration of fourteen days, enjoining the Defendants from transferring Plaintiff to Texas from Nevada</u>**. The Court defers ruling on Plaintiff's Motion for a Preliminary Injunction until the related hearing has been held.

**IT IS FURTHER ORDERED** that the Defendant Prisoner Transport Services **SHALL** submit a response to Plaintiff's Motion for Preliminary Injunction (ECF No. 6) by no later than January 11, 2019. The other Defendants may submit a response as they deem appropriate.

**IT IS FURTHER ORDERED** that a hearing regarding Plaintiff's Motion for Preliminary Injunction (ECF No. 6) is set for January 16, 2019 at 10:00 am in Las Vegas Courtroom 7C. Counsel for the parties are ordered to appear at this hearing.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall send a copy of this Order by certified, expedited mail to the following address:

> Las Vegas Metropolitan Police Department – Office of General Counsel
> General Counsel, Attn: Liesl Freedman or Martina Bauhaus
> 400 S. Martin L. King Boulevard, Building B
> Las Vegas, Nevada 89106

**IT IS FURTHER ORDERED** that Defendant Las Vegas Metropolitan Police Department is ordered to provide a copy of this order to its contacts with Prisoner Transportation Services by

January 8, 2019. Defendant Las Vegas Metropolitan Police Department shall file a notice with this Court by January 9, 2019 that it has provided a copy of this Order to its contacts from or attorneys for Defendant Prisoner Transportation Services.

**IT IS FURTHER ORDERED** that Clark County Detention Center shall provide a copy of this Order to Plaintiff by January 8, 2019.

DATED: January 4, 2018.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**